Barry K. Tagawa, Esq. (#140409)
THE LAW OFFICE OF BARRY K. TAGAWA
A Professional Corporation
57 Post Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 951-8600
Facsimile: (415) 951-8626
E-mail: barry@sf-attorney.com

Attorney for Plaintiffs ROBERT ICHO and
ICHO GROUP, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT ICHO, et al., | Case Number C-01-20858-JF-PSG |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ASSIGNMENT OF RIGHTS, RESTRAINING ORDER AND TURNOVER ORDER, AND ORDER TO APPEAR ON A BI-MONTHLY BASIS** |
| vs. | |
| PACKETSWITCH.COM, INC., et al., | |
| Defendants. | Date:  August 28, 2012 |
| | Time:  10:00 a.m. |
| | Dept.:  Courtroom 5 |

**TABLE OF CONTENTS**

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

III.    STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     PROPERTY SUBJECT TO ENFORCEMENT OF JUDGMENT . . . . . . . . . . . . . 3

V.      PLAINTIFFS ARE ENTITLED TO AN ASSIGNMENT ORDER . . . . . . . . . . . 3

VI.     PLAINTIFFS ARE ENTITLED TO A RESTRAINING ORDER . . . . . . . . . . . . 7

VII.    PLAINTIFFS ARE ENTITLED TO A TURNOVER ORDER . . . . . . . . . . . . . . 8

VIII.   DEFENDANT BURRELL SHOULD BE ORDERED TO APPEAR
        BI-MONTHLY AT COURT TO FURNISH INFORMATION IN AID OF
        ENFORCEMENT OF PLAINTIFFS' MONEY JUDGMENT. . . . . . . . . . . . . . . 11

IX.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## TABLE OF AUTHORITIES

### CASES

**First Central Coast Bank v. Cuesta Title Guarantee Company** 143 Cal.App.3d 12

(1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4

### STATUTES

C.C.P. § 699.710. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

C.C.P. § 708.510(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

C.C.P. § 708.510(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.C.P. § 708.520(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.C.P. § 708.520(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.C.P. § 699.040(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C.C.P. § 699.040(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C.C.P. § 708.110(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.C.P. § 708.110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.C.P. § 708.510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     12

C.C.P. § 708.205(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.C.P. § 708.130(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I.      INTRODUCTION

Plaintiffs ROBERT ICHO and ICHO GROUP, INC. (hereinafter collectively referred to as "Plaintiffs"), by the through their attorney, hereby submit their Memorandum Of Point And Authorities In Support Of Motion For Assignment Of Rights, Restraining Order And Turnover Order, And Order To Appear On A Bi-Monthly Basis as follows.

## II.     BACKGROUND FACTS

Plaintiffs obtained a Default Judgment in the amount of $424,000 against defendant MC HAMMER, aka **Stanley Berrell** (sic) and other defendants on June 10, 2003. (Declaration of Barry K. Tagawa, filed herewith, Exhibits "1" and "2.")  On June 19, 2009, the Court entered an Order Granting Motion For Administrative Relief To Amend And/Or Correct Default Judgment and an Amended Default Judgment which corrected the misspelling of "MC Hammer, aka Stanley Berrell" to "MC Hammer, aka **Stanley Burrell**" and ordered that the Amended Default Judgment shall relate back to and be effective as of the date of the original Default Judgment.  (Declaration of Barry K. Tagawa, Exhibits "3" and "4.")

Defendant MC HAMMER, aka STANLEY BURRELL ("Burrell") is an entertainer, theatrical performer, singer, songwriter, promoter, producer, consultant, investor, and entrepreneur, or the like.  (**Id**.)  Plaintiffs are entitled to effectuate collection.

The work of defendant Burrell generates income, accounts, accounts receivable, rights to payment of money, either arising from a continuing and ongoing contract, or a "one time" or "one-off" employment, or any combination of them.  Plaintiffs are informed and believe that defendant Burrell continues to work, earn monies, spend monies, invest monies, travel, and live a lavish lifestyle without paying on the Amended Default Judgment.  (**Id**.)

## III.    STATEMENT OF ISSUES

The instant motion raises the following issues:

(1) whether Plaintiffs are entitled to an assignment order from defendant Burrell?

(2) whether Plaintiffs are entitled to a restraining order against defendant Burrell?

1    (3) whether Plaintiffs are entitled to a turnover order from defendant Burrell?

2    (4) whether defendant Burrell should be ordered to periodically appear before this

3  Court to furnish information to aid in enforcement of the money judgment?

4

5  **IV.    PROPERTY SUBJECT TO ENFORCEMENT OF JUDGMENT**.

6    By this motion, Plaintiffs seek to levy upon the accounts and rights to payment of

7  money arising out of defendant Burrell's business enterprises, which generate fees, charges,

8  claims and amounts due, directly or indirectly to defendant Burrell.  Plaintiffs are entitled to levy

9  and execute upon such properties pursuant to C.C.P. § 699.710 which provides as follows:

10      Except as otherwise provided by law, all property that is subject to
      enforcement of a money judgment pursuant to Article I
11      (commencing with section 695.010 of Chapter 1) is subject to levy
      under a writ of execution to satisfy a money judgment.
12

13  Accordingly, the accounts receivable of defendant Burrell are subject to levy and execution.

14

15  **V.    PLAINTIFFS ARE ENTITLED TO AN ASSIGNMENT ORDER**

16    Plaintiffs move this Court for an assignment order under C.C.P. § 708.510(a)

17  which provides as follows:

18      Except as otherwise provided by law, upon application of the
      judgment creditor on noticed motion, the court may order the
19      judgment debtor to assign to the judgment creditor or to a receiver
      appointed pursuant to Article 7 (commencing with section
20      708.610) all or part of a right to payment due or to become due,
      whether or not the right is conditioned on future developments,
21      including but not limited to the following types of payments:

22      1.    Wages due from the federal government that are not subject
          to withholding under an earnings withholding order.
23      2.    Rents.
      3.    Commissions.
24      4.    Royalties.
      5.    Payments due from a patent or copyright.
25      6.    Insurance policy loan value.

26

27  An assignment order would alleviate the burden on Plaintiffs from having to attempt to levy on

28  the "precise date" that monies are due.  For example, in **First Central Coast Bank v. Cuesta**

1 | **Title Guarantee Company** 143 Cal.App.3d 12, 191 Cal.Rptr. 433 (1984), the Court of Appeal

2 | held that a premature (or late) levy did not reach the monies which were due at the time of a levy

3 | in that a levy constitutes a "snapshot" of any funds immediately due the debtor. (**Id**., 143

4 | Cal.App.3d at 16-17, 191 Cal.Rptr. at 436.)

5 |        As an example of Plaintiffs' "need" for this order, at his examination of judgment

6 | debtor on June 1, 2012, defendant Burrell testified that he received income from a "one-off"

7 | concert performance he gave somewhere in Los Angeles sometime in May 2012.  Defendant

8 | Burrell testified that he was unable to recall specifically where in Los Angeles the concert took

9 | place, was unable to recall whether tickets were sold for the concert, and was unable to recall

10 | whether there were other performers on the ticket besides himself.  Defendant Burrell testified

11 | that he received all of his compensation for the concert in "cash" from his road manager the day

12 | after the performance, and that he was unable to recall how much income he received, but

13 | estimated that it was somewhere between $5,000 and $10,000 in cash.  Defendant Burrell

14 | claimed not to know who his road manager obtained the cash from with which to pay defendant

15 | Burrell.  Defendant Burrell further testified that, immediately upon receipt of that cash, he gave

16 | all of the cash back to his road manager in order to pay the dancers at the show.  Defendant

17 | Burrell testified that he could not recall who any of those dancers were, and nor could he recall

18 | even how many dancers performed with him in that show.  Defendant Burrell testified that he

19 | could not recall receiving any other income during May 2012.  (**See** Declaration of Barry K.

20 | Tagawa, Exhibit "5," pp. 30-34.)

21 |        Defendant Burrell also testified that he did not recall how much income he

22 | received from January 1, 2012 through June 1, 2012.  He estimated that he performed "maybe"

23 | six (6) shows during that period, and that he received more than $10,000 and "possibly" more

24 | than $20,000 from January 1, 2012 - June 1, 2012.  He testified that he received all of that

25 | income in cash, and none of it y way of checks.   He testified that he did not know who else other

26 | than his road manager Michael Brummage paid him, because it depended on the show.  (**Id.**,

27 | Exhibit "5," pp. 34-36.)

28 |        Defendant Burrell testified that, in the year 2011, he earned an estimate of

$100,000, and that 90% of his income in 2011 was from giving concerts.  He testified that he had no idea where the other 10% of his 2011 income came from.  (**Id.**, Exhibit "5," pp. 41-43.)

Another separate and independent reason for Plaintiffs' "need" for this assignment order stems from defendant Burrell's attitude towards money.  Defendant Burrell testified that he hasn't made any "real money" from music since 1995, and he defined "real money" as follows:

> **"Real money," to me, would be anything over a hundred grand.  Like, you know – even that's not real money.  But anything over a hundred grand.  So I haven't made anything off of music over a hundred grand.**

(**Id.**, Exhibit "5", p. 88 (emphasis added.))  With that frame of reference, defendant Burrell testified that he made "ten grand" from his release of the album "Look Look Look."  (**Id.**)  With that frame of reference, defendant Burrell also testified that he had no idea when he released a song called "Dancejam the Music," and as to whether he made any money from it, he testified as follows:

> Q.  Did you make any money from it?
>
> A.  No.  No money of significance, if I did, so...
>
> Q.  Meaning under a hundred thousand?
>
> A.  Definitely.
>
> Q.  So I just want to make it clear, in my view – I want to know income that you have made even though it may be under a hundred thousand.  **So I don't want you to have an understanding, Mr. Burrell, that if you made under a hundred thousand dollars from something that you don't have to tell me.  Okay?**
>
> A.  I understand that.  **As long as you understand that from my perspective, it's in and it's out anyway, so it doesn't – it doesn't – it's an invalid point for what you are – for what we are here for.  That's the point.**

(Declaration of Barry K. Tagawa, Exhibit "5", p. 89 (emphasis added.))  Absent an assignment order, money for defendant Burrell will travel the path of, "it's in and it's out."  For example, defendant Burrell admitted to attending a $5,000/person re-election fundraiser at the St. Regis Hotel in San Francisco in April 2011 for President Obama's campaign.  He testified he did not recall whether he paid $5,000 for his ticket or if someone else paid it on his behalf.  (**Id.**, Exhibit "5," p. 83.)

C.C.P. § 708.510(c) provides as follows:

Subject to subdivisions (d), (e), and (f), in determining whether to order an assignment or the amount of an assignment pursuant to subdivision (a), the court may take into consideration all relevant factors, including the following:

> (1)   The reasonable requirements of a judgment debtor who is a natural person and of persons supported in whole or in part by the judgment debtor.
> (2)   Payments the judgment debtor is required to make or that are deducted in satisfaction of other judgments and wage assignments, including earnings assignment orders for support.
> (3)   The amount remaining due on the money judgment.
> (4)   The amount being or to be received in satisfaction of the right to payment that may be assigned.

In this case, defendant Burrell estimated under oath that he earned $100,000 in income in each of the last 3 years, i.e., 2011, 2010, and 2009.  (**Id.**, Exhibit "5", pp. 42-43.) Defendant Burrell also testified that his living expenses were approximately $20,000 over a five month period or approximately $4,000/month. (**Id.**, Exhibit "5", pp. 38-40.)  Assuming that his expenses are $4,000/month, this puts his annual living expenses at $48,000/year.  Even assuming that defendant Burrell's testimony that he earned $100,000/year in 2009, 2010, and 2011 was credible, which it is not, that still leaves approximately $52,000/year of monies to pay Plaintiffs under the Amended Default Judgment.

At his examination of judgment debtor, defendant Burrell testified that there were other outstanding judgment entered against him, aside from the instant Amended Default Judgment, and the total dollar amount of those other judgment was "a few hundred thousand." Defendant Burrell did not recall which courts those judgments were entered in, and testified that he had no idea if they were even in the Bay Area, and that he did not recall the names of any of those other plaintiffs.  (Declaration of Barry K. Tagawa, Exhibit "5", pp. 100-101.)  Defendant Burrell testified that he did not recall whether any of those other judgment creditors have taken steps to enforce a judgment against him.  (**Id.**, Exhibit "5", pp. 100-107.)

The principal amount of the Default Judgment entered was $424,000 on June 10, 2033.  As of July 11, 2012, the amount due and owing on the instant Amended Default Judgment is over $467,000.

## VI.    PLAINTIFFS ARE ENTITLED TO A RESTRAINING ORDER

Plaintiffs seek a restraining order under C.C.P. § 708.520(a) which provides as follows:

> When an application is made pursuant to Section 708.510 or thereafter, the judgment creditor may apply to the court for an order restraining the judgment debtor from assigning or otherwise disposing of the right to payment that is sought to be assigned. The application shall be made on noticed motion if the court so directs or a court rule so requires. Otherwise, it may be made ex parte.

The purpose of the restraining order is to prevent defendant Burrell from the disposition by sale, alienation, mortgage, conveyance, or otherwise, of the accounts and accounts receivable. Without such a restraining order, defendant Burrell has "free rein" to frustrate the assignment order, rendering such relief moot. Plaintiffs have demonstrated "need" under C.C.P. § 708.520(b) in that defendant Burrell has failed to pay any monies voluntarily; that the indebtedness is outstanding; and that defendant Burrell has otherwise been uncooperative.

Defendant Burrell testified that he sold his "music catalog" about 7-8 years ago for millions of dollars, and that he had no idea where any of that money went.

> Q. Have you made any money – well, strike that. When did you sell your music catalog?
>
> A. Seven, eight years ago.
>
> Q. And how much money did you receive?
>
> A. Millions.
>
> Q. About three million dollars?
>
> A. I don't remember. You know, I don't remember what the number was, but in that range. Millions.
>
> Q. And where did that money go? Where did the three million dollars go?
>
> A. I have no idea. I have no idea.
>
> Q. Can you tell me where any of it went?
>
> A. No, sir.

(Declaration of Barry K. Tagawa, Exhibit "5," p. 91.)

1   Contradicting his earlier testimony concerning his estimated earnings of $100,000

2   each year since 2009, defendant Burrell also testified that he and his family had a reality tv show

3   which was on the air for one season in 2009, for which he received "a few hundred thousand."

4   (**Id.**, Exhibit "5," pp. 80-82.)

5   Also contradicting his earlier testimony concerning his estimated earnings of

6   $100,000 each year since 2009, defendant Burrell testified that he co-founded a company called

7   Dancejam.com, with Jeffery Arone around 5 years ago, and that he received personal income of

8   a "couple hundred thousand" dollars from Dancejam.com until his relationship to the company

9   ended around 3 years ago in 2009.  (**Id.**, Exhibit "5," pp. 70-72.)

10

11   **VII.    PLAINTIFFS ARE ENTITLED TO A TURNOVER ORDER**

12   Plaintiffs seek a turnover order under C.C.P. § 699.040(a) which provides as

13   follows:

14   If a writ of execution is issued, the judgment creditor may apply to
     the court ex parte, or on noticed motion if the court so directs or a

15   court rule so requires, for an order directing the judgment debtor to
     transfer to the levying officer either or both of the following:

16

17   1.    Possession of the property sought to be levied upon if the
         property is sought to be levied upon by taking it into custody.

18   2.    Possession of documentary evidence of title to property of
         or a debt owed to the judgment debtor that is sought to be levied

19   upon.  An order pursuant to this paragraph may be served when the
         property or debt is levied upon or thereafter.

20

21   The purpose of a turnover order is to reach all checks, drafts, money orders, notes,

22   instruments, deposits and deposit accounts, to permit Plaintiffs the opportunity to receive

23   payment, when the accounts receivable are converted into "cash."

24   Plaintiffs can demonstrate their "need" under  C.C.P. § 699.040(b) in that without

25   such a turnover order, defendant Burrell again could frustrate the entire purpose of the

26   assignment order.

27   At his examination of judgment debtor, defendant Burrell testified that he has

28   bank accounts in his name, but didn't know how many.  He testified that he didn't know if he

1   had a checking account or a savings account.  He testified that he didn't know if his wife had any

2   bank accounts in her name.  In answer to the question whether he has access to bank accounts for

3   other persons or entities, defendant Burrell testified, "Possibly."  He didn't recall which persons

4   or entities.  As to whether he has access to bank accounts for any business entities, he testified,

5   "Possibly."  As to whether he has check-writing ability for any business entities, he testified,

6   "Possibly."  Defendant Burrell testified that the last time he wrote a check was sometime this

7   year, i.e., in 2012.  He also testified that he did not recall who the check was made to, for how

8   much, or on what entity's account.  (**See** Declaration of Barry K. Tagawa, Exhibit "5", pp. 23-

9   27.)

10          As to whether he owned any partnership interests, defendant Burrell testified,

11   "Possibly."  He testified that he could not provide any names of any of the partnerships that he

12   was possibly involved with.  As to whether he had any partnership agreements with anyone,

13   whether verbal or in writing, he testified, "Possibly" and "Maybe."  He testified that the reason

14   he was not sure is because he is not a lawyer.  He testified that he needs to ask a lawyer to know

15   whether he is involved in any partnerships.  As to whether defendant Burrell had any written

16   agreements with any other person or entity to do business, he testified, "Possibly, yeah.  Perhaps.

17   Maybe."  He testified that his accountant and/or one or more of his lawyers may have copies of

18   those written agreements, but that he himself did not.  (Declaration of Barry K. Tagawa, Exhibit

19   "5," pp. 45-52.)

20          Defendant Burrell testified that he could only recall the name of one lawyer he

21   had hired, David Keener, Esq., but wasn't sure if Mr. Keener represented him in connection with

22   a lawsuit or not.  As to whether defendant Burrell had any other lawyers or law firms on retainer

23   at this time to represent him in any capacity, he testified, "Possibly," and couldn't recall that

24   person's name and didn't recall what city he was in.  (**Id**., Exhibit "5,"pp. 19-21.)

25          When later questioned about his ownership interests in a company specifically

26   called Wiredoo, defendant Burrell admitted that he founded an internet company called Wiredoo

27   in November 2011, which he co-founded it with Vishal Verma who lived somewhere in the Palo

28   Alto area.  Defendant Burrell did not know where the principal place of Wiredoo's business was.

1   He testified that Wiredoo had a third co-founder, named Kumar, but defendant Burrell didn't

2   know the person's last name and had no idea where he lived.  He testified that he would assume

3   that, but did not know if, Wiredoo has a corporate bank account.  He testified that he is a

4   shareholder of Wiredoo, but that he didn't know how many shares he has in it.  He testified that

5   he did not know if he was an officer or director of Wiredoo.  (**Id**., Exhibit "5," pp. 55-61.)

6       When questioned about his ownership interests in a company specifically called

7   Bump, defendant Burrell testified that he had invested about $8,000-10,000 in a company called

8   Bump about a year ago.  He testified that he got nothing in return, no share certificate, for his

9   investment.  He testified that he hired a lawyer to help make his $8,000-10,000 investment.  He

10  testified that he did not know if Bump has any income, did not know how many employees it

11  had, and did not know where Bump's principal place of business was.  (**Id**., Exhibit "5," pp. 65-

12  69.)

13      When questioned about his ownership interests in a company specifically called

14  Square, defendant Burrell testified that he also invested about $8,000-10,000 in a company called

15  Square about a year ago.  He testified that he had a lawyer review written materials before

16  making that investment, but that he did not recall who that lawyer was.  He testified that he was

17  not sure if he owned any shares in Square as a result of that investment.  He testified that it was

18  his understanding that he would receive some interest or shares in Square, at some point.  He

19  testified that he would have to talk to his lawyer to find out if he had any shares and how much.

20  (Declaration of Barry K. Tagawa, Exhibit "5," pp. 72-73.)

21      When questioned specifically about his ownership interests in a company

22  specifically called Alchemist Management, defendant Burrell testified that he co-founded a

23  company called Alchemist Management about 18 months ago.  He testified that he owns a minor

24  ownership interest in Alchemist Management, in the range of about 10%, but that he has no

25  shares of stock to show that.  In response to the question whether any documents exist to show

26  his ownership interest, defendant Burrell testified that he would have to check with the lawyers,

27  but that he did not recall the name of the lawyers.  He testified that he would have to dig through

28  some papers but he didn't know where the papers were, and he may have to ask his accountant.

1   He testified that he paid a lawyer to assist him in receiving shares or an ownership interest in

2   Alchemist Management.  (**Id**., Exhibit "5," pp. 74-76.)

3           Plaintiffs seek a turnover order to The Law Office of Barry K. Tagawa, A

4   Professional Corporation whose address is 57 Post Street, Suite 900, San Francisco, CA 94104.

5

6   **VIII.   DEFENDANT BURRELL SHOULD BE ORDERED TO APPEAR BI-MONTHLY**
    **       AT COURT TO FURNISH INFORMATION IN AID OF ENFORCEMENT OF**
7   **       PLAINTIFFS' MONEY JUDGMENT.**

8

9           Plaintiffs move this Court for an order compelling defendant Burrell to

10  periodically appear on a bi-monthly basis, for purposes of testifying as to the current accounts,

11  accounts receivable, rights to payment of money, and any and all other property which may be

12  subject to appropriate levy under  C.C.P. § 708.110(a) which provides as follows:

13              The judgment creditor may apply to the proper court for an order
                requiring the judgment debtor to appear before the court, or before
14              a referee appointed by the court, at a time and place specified in the
                order, to furnish information to aid in enforcement of the money
15              judgment.

16          C.C.P. § 708.110 gives the court the broad jurisdiction to order defendant Burrell

17  to appear and periodically account and report for all of defendant Burrell's assets, and each of the

18  same, primarily consisting of accounts and accounts receivable.  The testimony of defendant

19  Burrell at his examination of judgment debtor on June 1, 2012 demonstrates the need for

20  Plaintiffs to have defendant Burrell appear periodically, and frequently, to the Court to furnish

21  information to aid in enforcement of the money judgment.  The fact that defendant Burrell could

22  not recall on June 1, 2012 where he gave a concert in Los Angeles in May 2012, and how much

23  he received in compensation for it, who else (if anyone) performed with him demonstrates the

24  need for Plaintiffs to have defendant Burrell appear more frequently than simply every 120 days

25  to be examined as a judgment debtor.  Indeed, his lack of memory and ability to recall

26  demonstrates a need for Plaintiffs to have him appear more frequently than even once a month.

27  Without such relief, Plaintiffs would be at a great disadvantage in attempting to identify the

28  accounts and/or the accounts receivable which would be subject to levy and execution under a

1  C.C.P. § 708.510 order.

2          Furthermore, Plaintiffs are entitled to a turnover order of all books, records,

3  papers and files, under C.C.P. § 708.205(a), which provides as follows:

4          Except as provided in subdivision (b), at the conclusion of a
           proceeding pursuant to this article, the court may order the
5          judgment debtor's interest in the property in the possession or
           under the control of the judgment debtor or the third person or a
6          debt owed by the third person to the judgment debtor or to be
           applied toward the satisfaction of the money judgment if the
7          property is not exempt from enforcement of a money judgment.
           Such an order creates a lien on the property or debt.

8          Plaintiffs similarly are entitled to an order compelling production of all books,

9  records, papers and files under C.C.P. § 708.130(a), which provides, "Witnesses may be required

10 to appear and testify before the court or referee in an examination proceeding under this article in

11 the same manner as upon the trial of an issue."  Said books, records, papers, and files are listed

12 by way of Exhibit "6" to the Declaration of Barry K. Tagawa and is incorporated by reference

13 herein.

14

15 IX.    **CONCLUSION**

16         This matter remains unpaid, and Plaintiffs need the strong intervention of this

17 Court to order an assignment of the accounts receivables which ultimately will bring a stream of

18 payments from defendant Burrell which will pay off the Amended Default Judgment, either in

19 part or in whole.  Without such relief, Plaintiffs would be forced to go on a "treasure hunt," to

20 find defendant Burrell's otherwise available assets, which would unreasonably burden and create

21 expense for Plaintiffs.  For the foregoing reasons, Plaintiffs respectfully request the relief as

22 sought herein.

23         DATED: July 24, 2012.

24                                          The Law Office of Barry K. Tagawa
                                           A Professional Corporation
25

26                                         _____/s/_____
                                           Barry K. Tagawa, Esq.
27
                                           Attorney for Plaintiffs ROBERT ICHO and
28                                         ICHO GROUP, INC.